UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARTIN K. MICHELMAN,<br>            Plaintiff,<br><br>v.<br><br>SUFFOLK COUNTY, SUFFOLK<br>COUNTY SHERIFF'S DEPARTMENT,<br>and ANDREA J. CABRAL, In Her Official<br>And Individual Capacities,<br>            Defendants. | Civil Action No. 05-CV-11577-RGS |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION TO COMPEL RESPONSES TO INTERROGATORIES NOS.
9,10, AND 11 AND DOCUMENT REQUEST 9.**

**I.   INTRODUCTION**

Plaintiff is the former Deputy Superintendent of Training and Special Operations at the Suffolk County Sheriff's Department. Sheriff Robert C. Rufo hired the Plaintiff as an instructor in 1991 and he continued his employment in the training division under Sheriff Richard J. Rouse. When Sheriff Andrea J. Cabral promoted him to the position of Deputy Superintendent in July 2003, Michelman for the first time became a management employee within the hierarchy of the Sheriff's Department. At the time of Michelman's promotion, Sheriff Cabral had been in office approximately six months.

On June 18, 2004 less than a year into his tenure, Michelman was terminated from his at-will management position with the Department.  He filed the instant action in July 2005. Mr. Michelman alleges his termination was in violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution.  Plaintiff's complaint contained one count and was based upon his assertion that his termination was unlawful because it was

1

premised on protected speech relative to a June 10, 2004 training that he lead for Sheriff's Department command staff in preparation for the Democratic National Convention.[1] Prior to his termination, Plaintiff was afforded a pre-termination hearing, although as an at-will employee, he was not entitled to such a hearing. Sheriff Cabral was the ultimate decision maker with regards to Michelman's termination. Hearing Officer Charlie Abate issued findings of facts that were reviewed by Sheriff Cabral prior to her decision.

Discovery is ongoing and the Plaintiff has taken depositions of Sheriff Andrea Cabral; former Chief of Staff Elizabeth Keeley; Former Superintendent Viktor Theiss and Attorney Charles Abate.

## II.   POSITION

Plaintiff filed Motion to Compel responses to Interrogatories nos. 9, 10 and 11. Plaintiff also requests a privilege log in response to Document Request No. 9. Defendants request the Court deny Plaintiff's Motion as Defendants have sufficiently responded to Plaintiff's interrogatories and all documents responsive to document request No. 9 have been provided to the Plaintiff.

### A.   Evidence of unsatisfactory job performance

Plaintiff seeks to compel more specific answers to Interrogatories relative to his unsatisfactory job performance. Interrogatory Nos. 9 and 10 seek very specific information that Defendants object to as overly broad, unduly burdensome, nonspecific, unfairly vague and ambiguous. The Plaintiff propounded his discovery requests to "The Suffolk County Sheriff' Department". Superintendent Gerard Horgan responded to the interrogatories on behalf of the Sheriff's Department.

---

[1] "Based on the Plaintiff's statements made on or about June 10, 2005 (sic), Defendant Cabral decided to effectuate his termination." (Complaint ¶ 17).

Defendants identified the documents contained in Plaintiff's personnel file and made reference to the email Plaintiff sent to Sheriff Garvey. Plaintiff's personnel file contains the Notice of Hearing that outlined the charges against him and all prior discipline imposed. Plaintiff also has the finding of facts of the Hearing Officer that summarized the grounds for Plaintiff's termination. Plaintiff questioned Sheriff Cabral, Elizabeth Keeley and Victor Thiess during their depositions regarding Michelman's job performance issues. The common theme expressed by the deponents was Mr. Michelman's inability to conform his behavior as a manager within the Department after numerous counseling sessions regarding what was expected of him as a high-level management employee of the Sheriff's Department.

In support of his Motion to Compel specific responses, Plaintiff alleges the case is a discrimination case and that the burden is on the employer to establish nondiscriminatory reasons for Michelman's termination. (*Plaintiff's Motion To Compel Responses To Interrogatories Nos. 9, 10, And 11 And Document Request 9,* p. 8). Plaintiff's cause of action however is brought under the First Amendment; as such the burden is on him in the first instance to prove that he engaged in protected activity. The reasons for his termination are irrelevant unless he established protection under the First Amendment.[2] Nevertheless, the underlying purpose of the modern discovery doctrine is to allow parties to obtain the "fullest possible knowledge of the issues and facts before trial." See, LeBarron v. Haverhill Cooperative School Dist., 127 F.R.D. 38, 40 (D.N.H. 1989). The reasons for Plaintiff's termination were sufficiently outlined in documents turned over to the Plaintiff. Furthermore, Plaintiff asked Sheriff Cabral, former Chief of Staff Elizabeth Keeley and former Superintendent Victor Thiess about Plaintiff's job performance during deposition. Sheriff Cabral made the ultimate decision to terminate Mr. Michelman, and

---

[2] Given the Supreme Court's very recent ruling in Garcetti v. Ceballos, 547 U.S. ___ (2006), 2006 WL 1458026 (U.S.) it is unlikely that Plaintiff will meet this burden.

both Chief Keeley and Superintendent Theiss were Michelman's immediate supervisors at one time. Their answers regarding Michelman's job performance were complete and accurate to the best of their recollection. Both Superintendent Theiss and Chief Keeley testified to numerous counseling sessions they had with the Plaintiff to assist him in improving his management style. The fact that the deponents could not recall specific dates for these sessions is immaterial to the central issue of the case.

      Plaintiff's request that "SCSD should be required to investigate and refresh its collective recollection concerning these central issues" is unduly burdensome and unnecessary. The Sheriff's Department employs approximately 1100 people. As the Deputy Superintendent of Training, Plaintiff would have had interaction in some form or other with many of those employees. Additionally, "unsatisfactory job performance" is subjective and individuals may have different interpretation of what constitutes unsatisfactory job performance. The key decision makers in this case this have already expressed what conduct of Michelman's they considered unsatisfactory. The facts and circumstances surrounding the decision to terminate Michelman are not unknown to the Plaintiff. The reasons were set forth in the documents provided. The motion to compel more specific answers to Interrogatory 9 and 10 should be denied.

      B.    **<u>Representation Issue</u>**

      In its initial disclosures, Defendants supplied the names of all Sheriff's Department staff members that were present at the command staff training conducted by the Plaintiff on June 10, 2004. The Sheriff's Department is a paramilitary organization that follows a hierarchical chain of command. By virtue of their presence at the meeting, each attendee has achieved rank within the Sheriff's Department. The office of the general counsel represents the Sheriff and Suffolk

County. As a practical matter, legal staff represents Sheriff's Department employees involved in litigation in various forums.

In responding to *Plaintiff's First Set of Interrogatories, Document Requests and Requests for Admission*, Defendants specifically reserved the right to supplement their responses as the investigation of the case was not complete and discovery was ongoing. Upon research of the legal issues and further investigation, counsel determined that employees of the Sheriff's Department "above the rank of Captain"[3] would be represented for purposes of the instant litigation. This conversation took place on a Friday afternoon while Defendants' counsel was at home. Counsel agreed to supply this information in writing the next week. The instant motion to compel was filed before counsel had an opportunity to supply the aforementioned writing.

For purpose of the instant litigation, counsel represents the following managerial Sheriff's Department employees:

a)   Andrea Cabral, Sheriff;
b)   Gerard Horgan, Superintendent;
c)   Eugene Sumpter, Superintendent;
d)   Michael Harris, Superintendent;
e)   Susan Grimes, Assistant Personnel Director;
f)   William Sweeney, Director, Personnel
g)   Charles Abate, Esq.;
h)   James Davin, Esq.;
i)   Clifford Carney, ADS;
j)   Gerald Walsh, ADS;
k)   Major Marie Lockhart;
l)   David Agnew; and
m)   Major Vincent Morrison.

Counsel also represents former Chief of Staff, Elizabeth Keeley. The above listed individuals are managerial employees and pursuant to Messing, Rudavsky & Weliky, P.C. v.

---

[3] Plaintiff's counsel recalled the conversation as "captains and above", the instant motion was filed prior to counsel's written confirmation.

5

<u>President and Fellows of Harvard College</u>, 436 Mass. 347, (2002) may not be contacted ex-parte by Plaintiff's counsel in preparation for the instant litigation.

      C.      **<u>Personal Information</u>**

Interrogatory No. 11, seeks the home addresses and phone numbers of Sheriff's Department employees listed in the Defendants' automatic disclosures. The names included all staff that attended the June 10, 2004 training given by the Plaintiff. Although counsel originally agreed to disclose the information with a protective order, review of the relevant Sheriff's Department Policy revealed that such an agreement would be improper absent the consent of the affected employees. (See Exhibit A, Suffolk County Sheriff's Department Policy S220, §1(C)(3). This information was relayed to Plaintiff's Counsel. (See Exhibit B attached). Several of the named individuals contacted objected to their personal information being released to Plaintiff's Counsel.

Plaintiff asserts he needs the residential addresses and telephone numbers in order to subpoena witnesses and to contact witnesses for fact gathering. Defendants agreed to provide Plaintiff with the schedule, location and work phone number of Department employees he wishes to speak to. Plaintiff has proffered no reason why he would be unable to contact the pertinent individuals at work. Subpoenas may be served at all Department facilities and employees have access to telephones. The vast majority of individuals in question are supervisors with posts commensurate with their rank, thus have access for private phone conversations.

Notably, the public records exception specifically excludes the personal information of correctional and public safety employees. *See* MASS. GEN. L. CH. 66 §10 (d). The legislature has recognized the confidential nature of such information and the privacy interests of individuals that work on the public safety field. Since Plaintiff has not offered an explanation as to why he

6

cannot achieve his objectives in a way that does not compromise the security, safety and privacy of the employees in question the court should deny his motion to compel the release of the personal information. Similarly, Defendants provided Plaintiff with the business address of Sheriff Robert C. Garvey. Plaintiff makes no showing why this information is insufficient to achieve his goals.

With regard to former employees John Scaduto and Maryellen Mastrorelli, Defendants decline to release their personal information based on the reasons outlined above. The home address of Richard Tranfaglia was disclosed to Plaintiff with the Automatic Disclosures in October 2005.[4]

### D. Affidavits and Transcripts

Plaintiff also moves for a privilege log with respect to his ninth request for documents.

9. All statements, affidavits or testimony transcripts of present or former employees of Defendant relating to the subject matter of this case.

Response: Defendant objects to this request on the ground that is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant information. Defendants further object to this Request on the grounds of attorney-client privilege and work product doctrine.

During the phone conversation on February 8, 2006, Counsel inquired of Plaintiff what he considered to be "the subject matter of this case" as in the Complaint Plaintiff alleges other alleged wrongdoing of Sheriff Cabral. Counsel confirmed that the "subject matter of this case" was only the termination of Martin K. Michelman. All responsive documents have been turned over to Plaintiff. To the extent Defendants did not specifically respond in writing to that effect, they do so now. Any request for a privilege log is moot, as there are no other responsive documents to Plaintiff's 9th request for production of documents.

---

[4] Unlike Scaduto and Mastrorelli, Tranfaglia is listed in the white pages, thus his address was already in the public domain.

### III. CONCLUSION

For the reasons as listed above, the Court should deny *Plaintiff's Motion To Compel Responses To Interrogatories Nos. 9, 10, And 11 And Document Request 9.*

|  |  |
|---|---|
|  | Respectfully submitted for, <br> The Suffolk County Defendants <br> By, |
| Date: May 31, 2006 | /s/ Kathleen M. Cawley_____ <br> Kathleen M. Cawley <br> BBO#551202 <br> Assistant General Counsel <br> 200 Nashua Street <br> Boston, MA 02114 <br> (617) 961-6680 |

| Chapter I<br><br>Administration & Management | Policy #:<br><br>**S220** | *References:*<br>**G.L. c.**149, Section 185; 268A<br>103 **CMR** 910.08; 924.02; 973.07; 943.09<br>3-**ACI**-3-4017; 4067; 4173; 4268<br>3-**ALDF**-1C-23; 3A-07; 3E-08 | *Page 1 of 9* |
|---|---|---|---|
| *Personnel*<br><br>Code<br>of Conduct | *Date of Issue:*<br><br>January 1, 2000<br>*Date Reviewed:*<br>March 2006 | *Approved:*<br><br><br>_____<br>Andrea J. Cabral, Sheriff | |

**Purpose**

As employees of the Department, we have an important mission in the criminal justice system. We provide an essential public service and are responsible for the care, custody, and control of sentenced inmates and pre-trial detainees while maximizing public safety and minimizing costs to the taxpayer. The Sheriff has set a very high standard of performance and all staff is responsible and accountable to the public. The importance of working with integrity and creativity is paramount even when the work is challenging and the resources are limited. You are a member of a staff dedicated to providing efficient and effective correctional and re-entry services to the communities of Suffolk County.

This policy codifies the rules governing standards of conduct and ethical behavior expected of all employees, contractors and volunteers of the Department.

**Policy Statements**

I. These rules are issued as general directives and do not attempt to cover each and every contingency that may arise during an employee's service while employed by the Department.
II. Nothing in these standards shall be construed to relieve an employee of his or her primary responsibilities concerning the safekeeping and custodial care of inmates/detainees, or from an employee's constant obligation to render good judgment, full and prompt obedience to all provisions of the law and all other lawful orders and directives.
III. All employees, contractors and volunteers are subject to the provisions of these rules.
IV. Improper or illegal conduct will not be tolerated, whether or not it is specifically mentioned or described in these rules.
V. Acceptance of appointment with the Department shall be acknowledgment of an employee's agreement to abide by this and every other policy, procedure and post order issued by the Department.
VI. Nothing in these rules is intended to conflict with the laws of the Commonwealth, or to infringe upon the constitutional rights of any employee.


**Procedures**

**I.  General Guidelines**

  A.  *Standards of Public Service*
  1. An employee's position with this Department is one of responsibility and public trust. As such, and in order to maintain the dignity and public perception of the Department, all employees must be discreet and prudent not only in their professional capacities, but in personal relationships, personal associations and places frequented.
  2. An employee's uniform, badge, identification or other official insignia shall be used only as is required in the course of his/her official duties.
  3. All employees are required to conform their behavior to the ethical standards spelled out in G.L. c.268A.

  B.  *Appointment, Employment, Termination of Service*
  1. Selection for appointment to a position with the Department is based in part on statements contained in the employment application form. Discovery that any statement is false may lead to an employee's immediate termination.
  2. All employees shall be photographed as necessary for identification purposes. Identification badges must be clearly worn at all times while on duty. Identification photographs may be retaken as needed to keep them current.
  3. All employees regardless of employment status (e.g., leave of absence or suspension) must report within 72 hours in writing to the Director of Personnel any change in residential address, home telephone number, person to notify in case of emergency, or any other pertinent personnel data.
  4. A minimum of two (2) weeks written notice of resignation to the Superintendent and Director of Personnel is required.
  5. Employees must report all other paid employment to the Director of Personnel. Failure to do so is grounds for discipline.

  C.  *Confidential Communications*
  1. The affairs of the Department or persons in custody are confidential, and any discussion on these subjects shall be limited to that which is necessary in the performance of an employee's duties, and shall only be shared with persons authorized to receive such information. Any unauthorized disclosure of confidential information shall constitute just cause for disciplinary action. Communications to law enforcement agencies regarding the commission or possible commission of any criminal offense are not confidential. Employees may report suspected illegal activity to law enforcement without notifying a facility Superintendent, Chief of Staff or Superintendent of the Training and Intelligence Division (TID), if it is done in accordance with Paragraphs L (1) and L (2) below.
  2. An inmate's or detainee's criminal history and related information is protected by the provisions of the Criminal Record Offender Information (CORI) Act, detailed in G.L. c.6, §172 et seq., and may only be released to authorized persons in accordance with S153, <u>Criminal Offender Record Information</u>.
  3. An employee's personal information, e.g. address, telephone, SSN is also confidential and will not be released without authorization from the employee or under subpoena or a court order, unless dissemination of such information is required in the ordinary course of Department business.

4. Written or electronic information generated by any division of the Department may or may not qualify as a public record eligible for release outside the Department. Except as is specifically authorized by Department policy or procedure, internal information may not be released outside the Department unless and until authorized by the General Counsel or her designee.
5. Details of any Department investigation are confidential and the release of any information, unless authorized by a Superintendent, will be grounds for discipline.  However, if the employee is the focus of the investigation, he/she may disclose any such information with his/her union representative and/or attorney to assist in his/her own defense.
6. Official records, papers, reports or copies of same shall not be removed from any Department facility without specific instruction or prior permission from the Superintendent except as is necessary for the performance of one's duties.

D. Interactions with Public
   1. Employees shall be courteous and professional in all public contact that may arise in the course of their duties.
   2. Tours:
      a) Formal tours of the institution may be arranged through the office of the Chief of External Affairs (COEA) or facility Superintendent.
      b) Unless assigned to the office of the COEA, employees may conduct tours only with prior approval of the facility Superintendent.
   3. Employees are encouraged to publish or speak on subjects related to their position but must first obtain approval from the Chief of Staff.

E. Interactions with the Media
   1. Only the Sheriff or the Chief of External Affairs, or their designee, may make statements to the media or release news statements or bulletins concerning the business of the Department.
   2. The Superintendent reserves the right to determine whether or not the media will be permitted into any facility.
   3. Media access to employees or inmates/detainees is governed by S130, <u>Inmate Media Access</u> and S131, <u>Public Information and Media Access</u>.

F. Interactions with the Other Employees
   1. The mission of the Department requires cooperation between and among employees. Therefore staff must be considerate and courteous in all their working relationships.
   2. Employees shall not foster discontent or engage in any activity that could lower the morale of another employee or disrupt the work environment, and will be discreet in the discussion of personal matters.
   3. An employee may not inspect or have access to another employee's personal information, personnel file or other official documents unless it is necessary in the official performance of their duties.
   4. Employees may not conduct investigations unless approved by a facility Superintendent and/or the Superintendent of TID.  Reporting truthful information of the commission or possible commission of a crime regarding Departmental operations or security to appropriate law enforcement agencies in accordance with Paragraphs L(1) and L(2) below, shall not be construed as conducting an investigation.

G. On-Duty Interactions with Inmates
   1. When interacting with inmates or detainees, employees must act solely in the furtherance of the Department's two-fold mission to provide for the custody and care of inmates and detainees.

2. Staff shall protect inmates/detainees from physical, emotional or sexual abuse, corporal punishment, personal injury, disease, property damage, discrimination and harassment.
3. Employees shall be professional, objective and unbiased in the application and enforcement of Department policies, procedures, post orders and relevant standards.
4. Employees shall not discuss Department business with, or in the presence of, inmates/detainees except as is required by their duties.
5. Employees must never express to an inmate/detainee a personal opinion regarding another employee or inmate or detainee, whether positive or negative.
6. Personal employee information shall not be discussed with, or in the presence of, inmates or detainees.
7. Employees must not give inmates/detainees the impression that staff are in conflict with one another, since such impression may lead to manipulative behavior.
8. Employees should not disclose the nature of an inmate/detainees' offense(s), or any visits with SID or outside law enforcement agencies, unless authorized to do so.
9. Except when expressly required by their duties, employees shall not intercede or act on behalf of an inmate/detainee's custody status with this Department or any another agency without prior approval of the facility Superintendent.  Reporting truthful information of the commission or possible commission of a crime regarding Departmental operations and security to law enforcement in accordance with Paragraph L(1) and L(2) below shall not be construed as interceding or acting on behalf of an inmate/detainee's custody status.
10. Employees are prohibited from all forms of bartering, buying or selling, directly or indirectly with inmates/detainees.
11. Employees shall not accept a fee, gift, gratuity or any item of value from an inmate/detainee.
12. Employees shall not provide any fee, gift, gratuity, or any item of value to an inmate/detainee except as is required in the performance of their duties or as otherwise authorized by a facility Superintendent.

H. *Off-Duty Interaction with Inmates*
1. It is recommended that employees not associate with, accompany, correspond or have an intimate or personal relationship with any inmate/detainee or former inmate/detainee of any state or county facility except as is required in the course of one's duties. If however, an employee has or intends to have such contact or relationship they must first notify the facility Superintendent in writing.
2. Any other contact with a former inmate/detainee not covered by paragraph H (1) must also be reported in writing to the Superintendent.
3. Employees must notify the Superintendent if a relative or personal friend is committed to a Department facility.  Employees are exempt from reporting contact with relatives after their release from Department custody.
4. The purpose of this notice requirement is to lessen any potential embarrassment to, and avoid any suggestion of impropriety by any employee, contractor or volunteer.

I. *Interaction with Inmates/Detainees' Friends or Family*
1. Any employee contact with an inmate/detainee's relatives or friends that results in the receipt of information relative to the commission or possible commission of a crime regarding Departmental operations or security must be reported in writing to a facility Superintendent, Chief of Staff or Superintendent of TID within twenty-four (24) hours or may be reported to the appropriate law enforcement agency in accordance with Paragraph L (1) and L (2) below.
2. Employees shall not accept a fee, gift, gratuity or any item of value from an inmate/detainee's family, friends, or any person acting on their behalf.

3. Employees shall not provide any fee, gift, gratuity, or any item of value to an inmate/detainee's family, friends, or any person acting on his/her behalf except as is required in the performance of their duties or as otherwise instructed by the Superintendent.
4. Conversation with inmates/detainees' visitors shall be limited to that which is required by an employee's duties.

J.  *Fitness for Duty*
   1. Drug Policy
      Use of illegal drugs and abuse of alcohol or prescription medication are incompatible with service in a law enforcement agency, and such conduct will be dealt with in accordance with S215, Drug Free Workplace.
      a) The Department will not tolerate the presence of illegal drugs or alcohol on its premises, nor will it tolerate any of its employees reporting for duty or engaging in official business of the Department while under the influence of alcohol or drugs.
      b) Any employee who, under doctor's care or otherwise, is required to take medication while on duty that may affect their performance in any way must report this fact to their supervisor and the Superintendent.
      c) No employee may dispense or give medicine of any type, prescribed or not to an inmate/detainee unless:
         i. the medication is administered in accordance with Health Services Policy #20, Medication Administration by a licensed nurse, physician or dentist or expressly authorized by the Superintendent or designee.
   2. Disability Or Need For Accommodation
      a) Any health problem, injury, or restriction which may affect an employee's job performance, or for which an employee may require an accommodation, must be medically documented and reported to the Director of Personnel.
      b) Such documentation must satisfy the following requirements:
         i. is an original;
         ii. be written on the stationery of the health care provider;
         iii. contain an original signature of the health care provider;
         iv. clearly state the specific physical restrictions the employee has due to the illness or injury;
         v. specify the expected duration of the restriction(s).
         vi. Division managers shall consult with the Director of Personnel on accommodations for work-related injuries and for non-work-related injuries.
         vii. is subject to review and resubmission every ninety (90) days.
   3. Length Of Work Day
      a) No employee may work for the Department for more than sixteen (16) hours in a twenty-four (24) hour period, and after working sixteen hours must not work in any capacity for eight (8) hours before returning to duty. This prohibition shall include regular shifts, overtime, training, community affairs events, paid details and outside employment.
      b) If an employee is suspended for any reason, he/she may not work an overtime shift or work a detail during the twenty-four hour (24) period comprising said suspension.
   4. Conduct On Duty
      a) Employees must not engage in any activity while working, which might interfere or distract them from the performance of their duties.
      b) Personal televisions, radios, cameras, CD, DVD or tape players and any other electronic devices are strictly prohibited inside the Jail, HOC, and all other SCSD programs unless authorized by the facility Superintendent.
      c) Reading materials other than official Department publications is prohibited while posted in a housing unit or control center unless authorized by the facility Superintendent.

    d) Cell phones are prohibited inside the Jail and HOC unless authorized by the facility Superintendent.
    e) The misuse of Department equipment or telephones and the generation of unauthorized charges will require restitution and may subject the employee to discipline.

5. Conduct Off-Duty
   a) All employees regardless of their employment status, e.g. on leave of absence or suspension must report in writing any involvement with law enforcement officials including but not limited to an investigation, arrest, issuance of a restraining order or court appearance.
      i. Such reports shall be made to the facility Superintendent within 24 hours of the involvement with law enforcement officials, or prior to the commencement of the employee's next shift, whichever is sooner. Employees need not report contacts with law enforcement officials that consist of reporting information regarding the commission or possible commission of a crime regarding Departmental operations or security in accordance with Paragraph L (1) and L (2) below.
      ii. If the facility Superintendent is unavailable, reports shall be made to the Deputy Superintendent or Assistant Deputy Superintendent at the appropriate facility.
      iii. Employees may be required to produce copies of police reports and restraining orders.
   b) All employees must be circumspect in their choice of associates, as even casual interaction with criminals, or with individuals engaged in illicit or illegal activities is inconsistent with employment with the Department.

K. *Department Property and Equipment*
   1. Employees are responsible for the care, control and security of Department property.
   2. If an employee's identification, badge, key card, or uniform articles, which bear official Department insignia, are lost, stolen or otherwise unaccounted for, a written report shall be filed immediately with TID.
   3. Department property shall include equipment, supplies, the physical plant and any items issued to employees on a permanent or temporary basis.
   4. Employees must promptly report the loss, damage, destruction, or discovered malfunction of any Department property.  If responsible for the loss, damage, destruction or malfunction, an employee may be prosecuted, disciplined and/or required to make restitution.
   5. Department letterhead is for official Department use only.  Memoranda or reports intended solely for internal communication should be written on blank white paper, either with or without computer-generated headings. The unauthorized use or waste of Department letterhead or other materials is prohibited.
   6. Equipment issued for any period of time must be returned in good condition.
   7. Upon separation from service for any reason, employees must return all issued equipment, badges, key cards, identification cards, policy and training manuals and any other Department property in their possession.

L. *Reports*
   1. Employees must report suspected criminal activity to a facility Superintendent, Chief of Staff or Superintendent of TID; unless the employee has a reasonable belief that such an internal report would result in retaliation by the employer.
   2. If an employee reasonably believes that making an internal report of suspected criminal activity would result in retaliation by the employer, then the employee must immediately make an external report to the Boston Police Department, the Massachusetts State Police, or the Federal Bureau of Investigation.  The employee will not be subject to discipline or retaliation by the employer for the act of reporting as long as the reporting is consistent with this paragraph and Paragraph L (1) above.

    3. Employees are required to report in writing all significant events regarding Departmental operations or security in which they are involved or about which they have personal knowledge. These reports must be submitted promptly, but no later than the end of the employee's shift unless specifically authorized otherwise. Reports are to be submitted to the immediate supervisor, unless instructed otherwise by an investigating official or Department policy.
    4. Employees must also file a written report whenever ordered to do so by any supervisor, member of SID any other Department official authorized to conduct an investigation.
    5. Employees must be truthful and cooperate if requested by SID any other office or individual appointed to conduct an investigation) to submit to an interview whether or not the employee has previously submitted an oral or written report.
    6. All reports generated in the course of an employee's duties are to be treated as confidential communications in accordance with paragraph C (2) (d).
    7. Failure to report, false reporting, incomplete reporting or inappropriately collaborating or interfering with another employee in the preparation of a report may result in discipline or criminal prosecution.

M. *Attendance*
    1. Regular and punctual attendance is expected of all employees and excessive absenteeism or tardiness will be dealt with firmly in accordance with policies S207, S208 and S209, <u>Managing Attendance</u>, and S211, <u>Unauthorized Absence</u>.
    2. Employees may not exchange duties or swap days or hours of work without prior authorization of their Shift Commander (uniformed) or immediate supervisor (non-uniformed).
    3. While off-duty and if advised by any means that an emergency exists at any Department facility, all executive staff members, uniformed officers and medical staff must contact their respective supervisor and report for duty if so ordered.

N. *Administrative Procedures*
    1. It is the responsibility of each employee to have a working knowledge of the policies contained within the employee policy manual, and to understand and comply with the rules and procedures detailed therein.
    2. If an employee does not understand a regulation, policy or an order, the employee is expected to seek explanation or clarification from his/her immediate supervisor.
    3. All employees must scan official bulletin boards (for the presence of official orders, issued policies or notices) when reporting for, and departing from duty.
    4. Any person tampering with, removing, defacing, or marking such orders or notices shall be subject to disciplinary action.
    5. After any absence from his/her regularly-scheduled shift, an employee shall inquire of his/her supervisor whether any important information was disseminated during his/her absence.

II. Offenses

If it is determined that an employee has committed any one of the following offenses or violated any Department policy, procedure or post order he/she is subject to discipline, up to and including termination:

A. Physical abuse of an inmate/detainee
B. Sexual contact with an inmate/detainee
C. Possession of illegal drugs or alcohol while on duty or in any Department facility or vehicle
D. A positive hair sample or urinalysis drug test

- E. Sexual harassment of anyone
- F. Conviction of any crime
- G. Possession of prescription medicine while on duty or in any Department facility/vehicle without prior approval of the Superintendent
- H. Acceptance of drugs/alcohol from, or delivery to, an inmate/detainee or employee
- I. Giving false statements orally or in writing while under oath or on an employment application or during an investigation
- J. Assault and/or battery on another person
- K. Assisting an inmate or detainee to escape or attempt to escape
- L. Use of excessive force
- M. Under the influence of drugs/alcohol when reporting for or while on duty
- N. Improper conduct
    1. Conduct unbecoming of an officer (uniformed personnel)
    2. Unprofessional conduct (non-uniformed personnel)
- O. Submission of a misleading, incorrect or false report (either oral or written)
- P. Possession of contraband within any Department facility or vehicle
- Q. Accepting contraband from, or delivering contraband to, an inmate, detainee or employee, contractor or volunteer
- R. Valid arrest or incarceration by a law enforcement agency
- S. Disrespect or insubordination:
    1. To a superior in the presence of inmates/detainees;
    2. To a superior in the presence of subordinates; or
    3. To a superior
- T. Acts in a discourteous, disrespectful or insolent manner towards another person while on duty
- U. Inappropriate familiarity
    1. With an inmate/detainee
    2. With a fellow employee, contractor or volunteer
    3. With visitors or the public
- V. Damage to property
    1. Willful damage to Department property
    2. Negligent use, misuse, abuse or misappropriation of Department property
- W. Improper/inappropriate attire:
    1. Out of uniform (uniformed personnel)
    2. Unprofessional attire (non-uniformed personnel)
    3. Uncleanliness in person, dress or demeanor
- X. Unauthorized absence
    1. AWOL (absence without leave)
    2. Misuse of sick leave
    3. Tardiness
    4. Abuse of sick leave
- Y. Offenses against public safety
    1. Unauthorized absence from or abandonment of a post
    2. Neglect or dereliction of duty
    3. Fighting or quarreling with fellow employees
    4. Sleeping while on duty
    5. Allowing an inmate/detainee to escape
    6. Violation of health and/or safety rules
    7. Failure to obey lawful oral or written order of a superior

**III.** Waivers and Modifications

    A. *Emergency*
       Provisions of these and other rules may be temporarily waived or modified in an emergency situation by order of the Sheriff or Superintendent.

    B. *Collective Bargaining Agreement*
       Nothing in these rules shall be construed to conflict with any relevant collective bargaining agreement*s*.

    C. *Authority*
       If any article, section, subsection, sentence, clause or phrase in this or other Department policy, procedure or post order is for any reason held to be unconstitutional, contrary to statute, exceeds the authority of the Sheriff or the Superintendent, or is otherwise inoperative, such decision shall not affect the validity of any other part of said policy, procedure or post order.



## Suffolk County Sheriff's Department



Jail
200 Nashua Street
Boston, MA 02114
(617) 635-1100

House of Correction
20 Bradston Street
Boston, MA 02118
(617) 635-1000

ANDREA J. CABRAL
SHERIFF

March 28, 2006

Robert S. Mantell, Esq.
Rodgers, Powers & Schwartz
18 Tremont Street
Suite 500
Boston, MA 02108



RE:   Michelman v. Suffolk County et. al.
      U. S. District Court Docket No. 05-11577-RGS

Dear Rob:

    I am writing in response to your March 7, 2006 letter and our subsequent telephone conversations. As discussed, I am enclosing additional documents responsive to your Request for Production of Documents. These documents include the documents Elizabeth Keeley spoke about at her deposition.

    I did not hear back from you on a definite date for Mr. Michelman's deposition. We spoke about Thursday, April 20, 2006, however I thought you were going to check with Marty and get back to me. As I understand it, we have three depositions currently scheduled: Viktor Thiess on Wednesday, April 19, 2006; Marty Michelman on Thursday April 20, 2006 and Charles Abate on Friday April 21, 2006. Please let me know if you have a different understanding.

    Also, my agreement to provide you with the personal information for Department employees was premature and in error. I understand your request for the information however, Sheriff's Department Policy prohibits the release of personal information except in certain circumstances such as subpoena, court order or with the consent of the individual. (SCSD S220, Bates no. 000389). Be advised that I did reach out to each individual to see if they would consent to your having their personal contact information and will provide you with the information upon authorization. You do have each person's work information available to you, so you do have the ability to make contact. I would ask that you not pursue any court intervention on this issue until I have the opportunity to obtain individual authorization or we can work out a satisfactory solution to the issue.

    I have not heard back from you on my request for Marty's financial information. I know you are looking for more specific answer to interrogatories nos. 12, 13, and 14 and will get those

1

to you. I note that our discovery deadline is June 15, 2006, and anticipate no problems in completing discovery prior to that time.

I am going to be away from the office until April 6, 2006 and wanted get the documents to you and confirm our scheduled depositions. While I am away, I will be checking voice mail, so feel free to call me with questions or concerns.

Thank you.

Sincerely,

*Kathleen M. Cawley*
Kathleen M. Cawley

Enc.